RONALD D. RIDENHOUR *et al.*, Plaintiffs-Appellants, *v.* MOLLMAN PUBLISHING COMPANY, Defendant-Appellee.

Fifth District   No. 77-429

Opinion filed December 14, 1978.

Lechien & Aguirre, Ltd., of Belleville (Thomas A. Lechien, of counsel), for appellants.

Sterling & Reed, of Fairview Heights, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiffs, Ronald D. Ridenhour and Robert C. Ridenhour, appeal from the order of the Circuit Court of St. Clair County granting a new

trial to defendant Mollman Publishing Company in their action for breach of contract.

Plaintiffs, members of the Mascoutah Typographical Union, were employed by defendant Mollman. On February 23, 1977, Ronald Ridenhour spent 45 minutes of the work day photocopying certain printing materials, apparently used for advertising purposes, known in the publishing trade as P.M.T.'s, which belonged to Mollman. Apparently, these materials were copied to aid plaintiffs in establishing a competing business. After George Santer, the president of Mollman, discovered that the Ridenhours had taken the P.M.T.'s home, he terminated their employment.

Shortly thereafter plaintiffs brought suit against Mollman for its failure to pay them vacation and severance pay pursuant to the negotiated union contract. Defendant admitted the existence of the contract, but denied that plaintiffs were entitled to this pay. The disputed sections of this contract are as follows:

"ARTICLE II

\* \* \*

Section 12. \* \* \* Anyone leaving his place of employment voluntarily or otherwise shall be entitled to and receive his vacation pay at the established rate.

\* \* \*

Section 15. In event of \* \* \* suspension all employees \* \* \* shall receive severance pay \* \* \*."

Plaintiffs later amended their complaint alleging that it was the practice of defendant to award severance pay to its discharged employees. After a trial on the merits, the trial court submitted the case to the jury at the request of the parties.

The jury returned a verdict in favor of plaintiffs upon which verdict judgment was entered. Defendant filed a post-trial motion seeking a remittitur of damages awarded as severance pay, or, in the alternative, a new trial. The trial court granted defendant's motion and ordered a new trial upon plaintiffs' refusal to accept the remittitur. The court justified its findings stating:

"The Court agrees with the jury's finding and that part of the verdict which is for vacation pay. The Court disagrees and determines that under the contract and the factual situation, the plaintiffs are, as a matter of law, not entitled to any severance pay."

Thereafter, plaintiffs filed a petition for leave to appeal from the order of the trial court granting a new trial. Believing that this petition presented grounds which reasonably challenged the propriety of this order, we

permitted this appeal to be taken. See *Keen v. Davis,* 108 Ill. App. 2d 55, 246 N.E.2d 467 (5th Dist. 1969).

■■■ The first issue which we feel compelled to address is the propriety of the trial court submitting a case involving the construction of a contract to the jury. Although the parties did not raise this issue on appeal, we believe that this case is not within the province of the jury. The law is well settled that the construction, interpretation and legal effect of a contract are issues to be resolved by the court as questions of law. (*Illinois Valley Asphalt, Inc. v. La Salle National Bank,* 54 Ill. App. 3d 317, 369 N.E.2d 525 (5th Dist. 1977); *Tondre v. Pontiac School District No. 105,* 33 Ill. App. 3d 838, 342 N.E.2d 290 (5th Dist. 1975).) We note that if the construction of a written agreement is dependent upon extrinsic facts that are disputed by the parties, a situation not present here, the case must be submitted to the jury. (*Wheaton National Bank v. Aarvold,* 38 Ill. App. 3d 658, 348 N.E.2d 520 (2d Dist. 1976); *Nerone v. Boehler,* 34 Ill. App. 3d 888, 340 N.E.2d 534 (5th Dist. 1976).) The only extrinsic evidence introduced in this case which allegedly reflected on the construction of the contract was that three Mollman employees received severance pay after being terminated for their incompetence. Such evidence, however, was uncontroverted and, therefore, did not present a question of fact. Consequently, its legal effect, although in dispute, remains to be resolved by the court.

In the present controversy, the parties dispute the meaning of article II, section 15 of the union agreement pertaining to the granting of severance pay. A resolution of this dispute is dependent upon the general rules of contract construction as the phrase "[i]n the event of * * * suspension," is susceptible to more than one interpretation. "Suspension" is defined as the "temporary forced withdrawal from the exercise of office" or "the state or period of being suspended, interrupted, or abrogated." (Webster's Third New International Dictionary 2303 (1971).) Although the words "suspension" and "suspend" usually connote something temporary, they have occasionally been used to mean "a permanent stop" or "discontinuation."

■■ Plaintiffs would have us adopt this latter construction because it would support their contention that the word "suspension" encompasses a termination of employment. While plaintiffs' interpretation of the contract is plausible, we do not believe that it gives proper effect to the intentions of the parties. The critical issue is whether the contract entitles an employee of a company to severance pay when discharged as a result of his own wrongdoing. It is inconceivable that an employee would demand a reward for engaging in a wrongful act just as it would be for an employer to consent to such a provision in an employment contract.

■■ Plaintiffs point out that in 1976 three employees were discharged by

Mollman for their inability to complete their work in the allotted time and awarded both severance and vacation pay. Plaintiffs consequently argue that this act clearly indicated that Mollman intended to pay discharged employees such pay pursuant to the union contract. While we agree that a party's action subsequent to the formation of an agreement is often the strongest evidence of that party's intended meaning (see *Chicago & Northwestern R.R. Co. v. Peoria & Pekin Union Ry. Co.*, 46 Ill. App. 3d 95, 360 N.E.2d 404 (3d Dist. 1977)), we find no connection between the termination of these three employees and plaintiffs. The former were fired for general incompetence while the latter were fired for an act of dishonesty. We believe these two situations, easily distinguishable on the facts, mandate a different resolution. The only reasonable interpretation of the contract considering the factual situation presented here is that Mollman would be required to grant severance pay to employees terminated for acts not involving any dishonesty or wrongdoing. Once, however, the employee participated in such wrongful acts, he would not be entitled to any severance pay. In the instant case, plaintiffs do not deny that they were fired for cause as a result of committing an act of dishonesty. Accordingly, plaintiffs are not entitled to severance pay pursuant to the contract.

In conclusion, we believe it necessary to comment on the course of the proceedings in the court below in light of the irregular procedures utilized. Counsel for both plaintiffs and defendant seemed more than willing to have the jury construe the meaning of the union contract when it presented a question of law. For example, defendant not only demanded a jury trial, but, in addition, failed to object to the instructions tendered by plaintiffs which directed the jury to determine whether plaintiffs were entitled to severance pay, although the instructions did not inform the jury in what manner this question should be decided. Although defendant can hardly complain that the jury resolved the issues against it when it was instrumental in having the jury interpret the provisions of the contract (see *Ahlvers v. Terminal R.R. Association*, 31 Ill. App. 3d 166, 334 N.E.2d 329 (5th Dist. 1975)), we nevertheless believe that the trial court and not the jury should resolve questions of law.

We are also confused by the actions of the trial court in first submitting the case to the jury and then ordering a new trial upon plaintiffs' refusal to accept the remittitur. The trial court was correct in noting that under the contract plaintiffs were not entitled to severance pay as a matter of law. Considering the court's willingness to construe the provisions of the contract, we fail to understand why a new trial was ordered.

Defendant does not dispute, and we agree, that plaintiffs are entitled to vacation pay. Accordingly, the order of the Circuit Court of St. Clair

County is reversed and the cause remanded with directions to enter judgment for plaintiffs to the extent of the loss of vacation pay under the contract.

Reversed and remanded with directions.

G. J. MORAN, P. J., and JONES, J., concur.