Sharon BOESL, individually and as administrator of the estate of Peter Boesl, Plaintiff,

v.

SUBURBAN TRUST & SAVINGS BANK; Mary Brady; Charles Hoffman; and Denis Daly, Defendants.

No. 85 C 8269.

United States District Court, N.D. Illinois, E.D.

Sept. 4, 1986.

Russell J. Fee, Elizabeth Scheuerman, Law Offices of Russell J. Fee, Oak Park, Ill., for plaintiff.

Eric L. Samore, Querrey, Harrow, Gulanick & Kennedy, Ltd., Chicago, Ill., for defendants.

## ORDER

BUA, Justice.

Before the Court are plaintiff's motion to strike certain paragraphs of defendants' motion to strike affidavits, defendants' motion to strike affidavits, and defendants' motion for summary judgment. For the reasons stated herein, plaintiff's motion to strike is granted only as to footnotes 2 and 3 of defendants' memorandum in support of their motion to strike. Defendants' motion to strike plaintiff's affidavits is denied. Defendants' motion for summary judgment is granted only as to Count VII of plaintiff's complaint and plaintiff's claim for punitive damages under all counts.

## I. FACTS

Plaintiff, Sharon Boesl, sues individually and as administratrix of the estate of her deceased husband, Peter Boesl. Defendants include the former employer of Peter Boesl, Suburban Trust & Savings Bank (Suburban), and three individual defendants: Denis Daly, the President of Suburban; Charles Hoffman, Senior Vice Presi-

dent; and Mary Brady, Assistant Vice President and Personnel Officer. Plaintiff's eight-count complaint alleges that Peter Boesl was wrongfully denied medical benefits under an employee benefit plan established by Suburban pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq.

In April of 1983, Peter Boesl (Boesl) was hired by Suburban as vice president in the loan department. At the time Boesl was hired, Suburban had an employee group health plan underwritten by the Prudential Life Insurance Company (Prudential). Boesl, as an officer, was immediately eligible for benefits under the Prudential plan. (Complaint para. 13, Answer para. 13.)

On September 22, 1983, Boesl was admitted to the hospital with what was diagnosed as pneumonia and remained out of work until November 7, 1983. On October 1, 1983, Suburban established a new employee benefits plan, which was self-funded. (Defendants' Ex. A.) According to defendants, when Boesl returned to work in November 1983, Brady informed him that because he was not working full time on the date the plan took effect, he was not covered under it, but would still be covered under the old Prudential plan until he came back to work full time.

Boesl worked part-time from November 7, 1983 until November 19, and then on a full-time basis until November 30. Boesl was hospitalized again from December 5, 1983 until December 20. At this time he was diagnosed as having a terminal illness. Defendants claim that they were unaware of the severity and terminal nature of Boesl's illness before this suit was filed.

On December 12, 1983, Brady submitted claims to Prudential under the Major Medical Extended Benefit provision, stating in a letter that Boesl returned to work for "a very limited basis and is still unable to fulfill his duties full time." (Defendants' Ex. L.)

Boesl was again hospitalized from January 3 to January 11, 1984. It was during this period that Prudential informed Brady that the Extended Benefit provision only lasted 90 days after termination of Prudential's group policy and that Prudential would not pay those claims incurred after December 31, 1983.

On or about January 14, 1984, Brady met with Boesl and told him again that he was not covered under the self-funded plan or the Prudential plan, but explained to him about the possibility of obtaining a conversion policy effective upon Boesl's termination of employment. Boesl then signed a letter of resignation dated December 31, 1983, after Brady stated that it was only a formality and that, when he was released from his doctor to work full time, Suburban would rehire him and he would be covered under the self-funded plan. Boesl was told substantially the same thing by Daly, the President of Suburban, who told Boesl that he would be re-elected vice president when he returned to work. At the time of his resignation, Suburban agreed to retain Boesl as an independent contractor at the same pay rate which he received as vice president. Under this consulting agreement, Boesl expressly waived all employee benefits. Suburban then applied for and paid a $1,168 premium through Maccabees Mutual Life Insurance Company for a conversion policy for Boesl which was supposed to provide medical insurance coverage for Boesl and his family from January 1, 1984 through June 30, 1984.

On January 23, 1984, Boesl returned to work with a doctor's release. Although he worked a total of 185½ hours between January 23 and March 1, 1984, Boesl's name was never resubmitted as a vice president, and he was never rehired under his old status as an "employee," or covered under the self-funded plan. What occurred at the end of February 1984 is disputed. Plaintiff contends that Boesl's supervisor, Hoffman, was uncooperative and that Suburban refused to renew the independent contractor's agreement. Defendants allege that Boesl quit. In any event, Boesl did not return to work either as an employee or an independent contractor after March 1, 1984.

On March 10, 1984, Brady assisted Boesl in applying for medical benefits under the Maccabee conversion policy. Pursuant to Maccabee's request, Boesl's doctors stated on a form that Boesl was suffering from a terminal illness and that he had been totally disabled since September 28, 1983. On June 21, 1984, Maccabee wrote Boesl, declining to cover any expenses related to a sickness which caused the insured to be "totally disabled" prior to the date the Maccabee policy became effective, January 1, 1984. Boesl died on September 12, 1984.

Plaintiff's complaint consists of eight counts. Count I alleges "conspiracy," claiming that (1) defendants "adopted and carried out a policy of ridding itself of employees considered to be heavy claimers of medical insurance," and (2) the individual defendants conspired together to deprive Boesl of his employment and employee benefits in violation of ERISA, 29 U.S.C. § 1001, *et seq.* Count II alleges that defendants breached their fiduciary duties under 29 U.S.C. §§ 1104(a) and 1109. Count III alleges liability for breach of fiduciary responsibility of a co-fiduciary under 29 U.S.C. §§ 1105 and 1109. Counts IV, V, and VI allege interference with Boesl's protected rights under 29 U.S.C. § 1140. Count VII alleges common law fraud. Count VIII purports to state a claim under the Illinois Family Expense Statute, Ill.Rev.Stat., Ch. 40, § 1015.

In each of the counts, plaintiff seeks $1.5 million for the following relief: (1) back pay for Boesl from March 1, 1984 to September 12, 1984; (2) compensation for Boesl's loss of employee benefits from the loss of a life insurance policy in the amount of $25,000; (3) payment of Boesl's medical bills incurred (approximately $31,000); (4) punitive damages; and (5) reasonable attorneys' fees.

Defendant has filed a motion for summary judgment as to each and every count. In plaintiff's response to this motion, plaintiff attached as exhibits, among other documents, three affidavits of other former Suburban employees who were allegedly terminated for their use of employee medical benefits. Defendants have filed a motion to strike these three affidavits. In response to this motion to strike, plaintiff filed her own motion to strike parts of defendants' memorandum in support of their motion to strike.

## II. DISCUSSION

In plaintiff's response to defendants' motion for summary judgment, plaintiff attached, among other exhibits, three affidavits from former employees of Suburban that plaintiff offers in support of her conspiracy theory. The first affidavit, by Frances Jeppson, states that she was employed as a switchboard operator for Suburban from October 1979 to October 1983. She states that she filed medical claims for two hospitalizations of separate illnesses and a continuing severe skin ailment. She believes that the reason she was fired was that she was sick and filing medical claims. The second affidavit, by Mary Christiansen, states that she was employed by Suburban from October 7, 1983 to November 29, 1983 as a bookkeeper and that she was fired 12 days after she fell and injured her back. In the third affidavit, Lena Goodloe states that she was employed with Suburban from November 1983 to March 13, 1984 as a teller. She also states that she had an operation on her foot within the dates of her employment at Suburban and Brady refused a claim of $700 for part of her bill after she had been fired.

In defendants' motion to strike these affidavits, they attach exhibits from various employees, including the supervisors of the above affiants, which contradict some of the allegations made by the affiants. In plaintiff's motion to strike, she attempts to strike certain paragraphs of defendants' memorandum in support of the motion to strike and exhibits attached thereto.

### A. *Plaintiff's Motion to Strike*

Exhibit C to defendants' motion to strike, an affidavit of Mary Brady, is introduced to counter plaintiff's conspiracy theory. Plaintiff's motion to strike seeks to strike five paragraphs of Exhibit C.

■ Paragraph 6 of Exhibit C states: "During [Frances Jeppson's] 4–year employment relationship (1979–1983) with Suburban, she submitted approximately $5,200 in claims." Plaintiff seeks to strike this paragraph on hearsay grounds. At the time plaintiff made the motion to strike, affiant attached no exhibits supporting her claim in paragraph 6. In defendants' response, however, Brady attached medical bills/forms which were received in the "ordinary course of Suburban's business." Therefore, the documents fall within the business records exception to the hearsay rule. Fed.R.Evid. 803(6). Paragraph 6 is therefore admissible as a summary of these documents.

■ Plaintiff claims paragraphs 8 and 9 should be stricken for the same reason as paragraph 6. Paragraphs 8 and 9 read as follows:

8. Between 1979 and 1983, two Suburban employees, Joan Heneghan and LaVerne Ostrowski, had claims totalling more than $40,000. Both persons are still employed by Suburban.

9. Between 1979 and 1983, one Suburban employee, Nancy Logg [sic], (now deceased) had claims amounting to over $60,000.

In defendants' response, however, Brady attached the medical bills/claims for Heneghan, Ostrowski, and Legg, and thus this motion to strike paragraphs 8 and 9 is denied for the same reason stated for paragraph 6.

Brady alleges in paragraph 7 of Exhibit C:

I have reviewed the medical files of the other Suburban employees for the years 1979 through 1983. During this time period, at least 15 Suburban employees had medical claims in excess of $5,200. Of these 15 employees, Frances Jeppson was the only one terminated involuntarily. Forty-three percent of these employees are still employed by Suburban.

Plaintiff claims that this paragraph is inadmissible hearsay. This paragraph is a summary of Suburban's business records. The general rule is that a summary is admissi-

ble where records are lengthy, provided that the original records are available. *See* *United States v. Strauss,* 473 F.2d 1262 (3d Cir.1973). Defendants provided plaintiff with information about 55 employees who had applied for benefits under the ERISA plan. (Defendants' Ex. B.) Therefore, it appears that the original records are available to plaintiff. If plaintiff is somehow prevented from obtaining these records, she must bring this to the Court's attention. Her remedy would then lie in a motion for production of documents, rather than a motion to strike based on hearsay.

■ Paragraph 10 of Brady's affidavit states: "$5,200 in claims over a 4 year period is not a significant amount. Jeppson would not be classified as a heavy user of medical benefits." Plaintiff objects to this paragraph as being conclusory and unsupported by facts. This objection fails. Affiant alleges prior to this paragraph that she is in charge of the personnel department and that she is the only person who has access to the medical files. These representations satisfy the Court that the affiant is experienced with medical claims and qualified to give her opinion as to what is a significant amount of claims and what is considered heavy use of benefits.

Plaintiff also seeks to strike paragraphs 6 and 8 of James Teel's affidavit. Teel was in charge of supervising Jeppson during the course of her employment. Paragraph 6 states simply: "It was Suburban's policy to review, not only the problems of the preceding 12 months, but also the unresolved and uncorrected problems from prior years." Plaintiff offers no argument in support of the motion to strike with respect to this paragraph. In light of this, and the fact that this paragraph appears to be based on personal knowledge, plaintiff's motion is denied.

■ Paragraph 8 is a table that sets forth the number of days Jeppson missed work from 1979 through 1983. Plaintiff objects on hearsay grounds. This objection fails because the same information is contained in a memo dated October 8, 1983

that appears to have been prepared in the regular course of business. Fed.R.Evid. 803(6). Therefore, paragraph 8 is admissible as a summary chart of business records.

■ Exhibit No. 1 to Teel's affidavit consists of two memos about Jeppson's performance written by Brady. Plaintiff objects to this exhibit as unauthenticated by Brady. In response, defendant Brady has filed an affidavit stating that she prepared the two memos. This affidavit satisfies the Court as to the exhibit's authenticity.

Plaintiff attempts to strike Group Exhibit No. 1 through Exhibit E to defendants' motion to strike, memos about Lena Goodloe's performance, as being unauthenticated. In response, defendants have filed affidavits from the authors of these memos authenticating them. Therefore, this Court will not strike these exhibits.

■ Plaintiff's motion to strike footnotes 2 and 3 of defendants' memorandum in support of their motion to strike the plaintiff's affidavits is granted because these footnotes contain unsupported allegations as to plaintiff's attorney's conduct in this case and are immaterial to any issue in this case.

In conclusion, plaintiff's motion to strike is denied except as to footnotes 2 and 3 of defendants' memorandum in support of their motion to strike the plaintiff's affidavits. These footnotes will not be considered by this Court in discussing defendants' motion to strike.

### B. *Defendants' Motion to Strike*

Plaintiff has alleged in paragraph 31 of Count I of her complaint that: "Prior to, during, and after the conversion to a self-funded plan, the Bank adopted and carried out a policy of ridding itself of employees considered to be heavy claimers of medical insurance." In support of this "conspiracy" theory, plaintiff filed among other exhibits, three affidavits of employees, Frances Jeppson, Mary Christiansen, and Lena Goodloe, who had used medical insurance through the bank and have since been terminated. Defendants claim that these affidavits are irrelevant and immaterial and should be stricken.

■ Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The affidavits in question make the policy alleged in paragraph 31 more probable than it would be without them. Therefore, the affidavits are relevant and admissible.

Defendants argue that the affidavits are in essence character evidence to show evidence of similar wrongs by defendants in order to show that they acted in conformity therewith. Such evidence is usually inadmissible. Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b).

In the instant case, the affidavits are offered to show defendants' motives and intent regarding Boesl rather than to show defendants' characters. They also tend to make the existence of the alleged plan against Boesl more probable. Therefore, the affidavits are admissible.

Defendants also contend that plaintiff was furnished information regarding over 130 present and former employees and the fact that plaintiff only offers three affidavits to support her "conspiracy" theory makes these affidavits irrelevant. Defendant also claims through several attached exhibits that these employees were terminated for inadequate performance rather than due to their medical insurance claims. Defendants' arguments, however, go to the weight of this evidence and not its relevancy or materiality. Therefore, defendants'

motion to strike plaintiff's affidavits is denied.

### C. *Defendants' Motion for Summary Judgment*

Summary judgment is appropriate only when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing that no genuine issue of material fact exists. *Big O Tire Dealers Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984). The court must view the evidence and all reasonable inferences to be drawn therefrom, in the light most favorable to the party opposing summary judgment. *Id.*

### 1. *Benefits Due Under the ERISA Plan*

Defendants' initial argument for summary judgment is that no employee medical benefits were due Boesl under the terms of the self-funded ERISA plan. Specifically, defendants assert that Boesl is excluded from medical coverage under the pre-existing conditions clause of the plan which provides:

> No benefits shall be paid to a Covered Person hereunder in connection with the same as a related cause for which any medical care, treatment or service was received by or recommended by a physician and surgeon for the Covered Person within a 90–day period immediately before becoming covered, until the earliest of:
>
> (1) The end of a period of 90 consecutive days after becoming covered under the Plan during which any medical care, treatment or service was not received to or recommended by a physician and surgeon for the Covered Person for the same or related cause, or
> (2) The end of a period of twelve consecutive months during which such Covered Person has been continuously covered under this Plan.

> This provision does not apply to persons if their coverage is effective on the date of issue of this plan.

(Defendants' Ex. F, p. 19.)

Defendants argue that, since Boesl's claims are for the same illness for which he received treatment before the plan went into effect, Boesl is not covered for this illness. They concede that this clause would not be applicable if Boesl's coverage was effective October 1, 1983, the date of issue of the plan. However, they argue that coverage for Boesl was not effective October 1, 1983 because of the Deferred Effective Date clause which provides in pertinent part:

> If any individual is not actively at work ... when his coverage would otherwise take effect; it shall take effect on the first day of the plan month following the date the individual returns to work, ... provided the person still meets the eligibility requirements.

(Defendants' Ex. F, p. 5.)

In sum, defendants' argument is that Boesl is excluded from coverage under the plan because he had a pre-existing illness at the time his coverage would have taken effect, and since his coverage could not have taken effect on the date of issue of the plan, since he was not actively at work, Boesl is not exempt from the pre-existing conditions clause.

■ There are several problems with this argument. First, the provisions of the plan apparently did not exist in writing in November 1983 when Brady first told Boesl that he would not be covered for his pre-existing illness. The plan document was being printed and was not available until sometime in 1984. The employees were informed through a newsletter dated October 1983. There is no mention of a pre-existing conditions exclusion in the newsletter. Therefore, a genuine issue of material fact exists regarding which document was controlling for medical claims after October 1, 1983 and before the actual plan document was printed.

Defendants argue in their reply memorandum that even if the plan document did not exist, an Employee Booklet which mirrored the provisions of the plan was distributed during the middle of October 1983. The booklet provides:

If you have any illness or injury when your coverage starts, and you had expenses in the 90 days just before the date your coverage started, expenses for that illness are not covered by this Plan until you go 90 days without an expense or are covered 12 months, whichever is first.

(Defendants' Ex. K, p. 14.)

There is no mention in this Booklet of the provision in the plan document which exempts employees covered on the date of issue from the pre-existing condition clause. As for the deferred effective date clause, the Booklet provides in pertinent part: "WHO IS NOT ELIGIBLE UNDER THIS PLAN: ... Employees away from work when the eligibility waiting period is satisfied—until the date the employee returns to full-time work." (Defendants' Ex. K, p. 10.) This eligibility waiting period apparently refers to the 60 days during which a nonofficer employee must wait before becoming eligible under the plan. Finally, there is a question whether the pre-existing conditions clause is applicable to all employees or only new employees at the date of the plan's issuance.

The overriding purpose in construing a contract is to give effect to the intent of the parties at the time the contract was made. *White v. Roughton,* 689 F.2d 118, 120 (7th Cir.1982), *cert. denied,* 460 U.S. 1070, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983). The intent of the parties must be determined with reference to the contract as a whole, not merely by reference to particular words or isolated phrases, but by reviewing each part in light of the others. *Air Line Stewards and Stewardesses Assoc. v. Trans World Airlines, Inc.,* 713 F.2d 319 (7th Cir.1983). After considering all of the above clauses together, this Court finds that the provisions are ambiguous.

Where ambiguity exists in a contract, and the construction of a writing is dependent upon conflicting extrinsic evidence, a question of fact for the jury is presented. *Ridenhour v. Mollman Pub. Co.,* (1978), 23 Ill.Dec. 36, 37, 383 N.E.2d 803, 804, 66 Ill.App.3d 1049, 1051 (1978). In the instant case, the intent of the defendant Suburban when the plan was established is disputed. Suburban's intent to exclude only new employees is evidenced by Suburban's treatment of Boesl regarding his coverage after October 1, 1983.

Boesl was given an I.D. card when he returned to work in November 1983 to be used by him as proof of coverage under the plan. Suburban processed a small medical claim submitted by Boesl for expenses incurred on November 16, 1983. It deducted dependent contributions to the Plan from his paychecks for his wife, Sharon, after October 1, 1983. Dependents are only eligible under the plan if the employee is eligible. When Boesl was admitted to the hospital on December 4, 1983, Boesl presented his I.D. card and Brady specifically stated to the hospital that he was covered under the self-funded plan. Given these facts, there exists a genuine issue as to whether Boesl was covered under the self-funded plan.

Defendants argue that, even if Boesl was eligible after October 1, 1983, he was only covered for medical expenses other than those resulting from the pre-existing illness. This argument does not take into consideration the exception to the pre-existing conditions clause which states that the provision does not apply if coverage was effective on October 1, 1983.

Suburban's intent to exclude only new employees is also evidenced by (1) the failure to mention the pre-existing illness clause in the October Newsletter (Plaintiff's Ex. A); (2) a deposition of Mary Brady wherein she states the self-funded plan was to be exactly like the old Prudential plan, except with Suburban's name on it; and (3) a deposition of Michael Elliot, the drafter of the self-funded plan document,

wherein he states that the pre-existing condition provision was only to apply to new employees.

Since there exists genuine issues as to (1) what document Suburban intended to control claims for medical benefits after October 1, 1983, and (2) whether the pre-existing conditions clause was intended to apply to only new employees of Suburban, summary judgment is inappropriate.

### 2. *Judicial Review of Trustees' Decision*

■ A trustees' decision to deny benefits under an ERISA plan may not be disturbed unless the action was arbitrary or capricious. *Wardle v. Central States Pension Fund,* 627 F.2d 820, 824 (7th Cir. 1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 208 (7th Cir.1985). Defendants argue that, even if Boesl is due medical benefits under the plan, Brady's decision to deny coverage to him was not arbitrary or capricious and is therefore not subject to judicial review.

The problem with applying this standard to this case is that Brady's decision to deny benefits was never put in writing. 29 U.S.C. § 1133 provides:

> [E]very employee benefit plan shall—(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant ...

29 U.S.C. § 1133. It is impossible to determine whether Brady's decision was arbitrary when there is no writing setting forth the specific reasons for the denial. Instead, defendants have, after the fact, offered a particular interpretation of the documents describing coverage under the plan that supports Brady's decision. As discussed earlier, this interpretation may be completely erroneous after a jury determines the actual intent of Suburban when it enacted the self-funded plan.

### 3. *Count I*

Count I alleges that "prior to, during, and after the conversion to a self-funded plan, the Bank adopted and carried out a policy of ridding itself of employees considered to be heavy claimers of medical insurance." It further alleges that the individual defendants "conspired to deprive Peter Boesl of his employment and his employment benefits."

■ There are genuine issues of material fact under both allegations. As to the first, there is an issue as to Suburban's motives and intent in discharging three other employees—Frances Jeppson, Mary Christiansen, and Lena Goodloe, all of whom had or were going to have substantial medical claims. Defendants have attempted to rebut plaintiff's claims by offering affidavits of their own which show these employees were fired for cause and not because of their medical claims. Viewing the evidence in the light most favorable to plaintiff, the Court finds genuine issues of material fact regarding defendants' intent and motives for discharging the employees.

■ As to the second allegation, the defendants' conduct in (a) inducing Boesl to resign by representing to him that his resignation was only a formality in order to obtain conversion coverage, and that he would be rehired as a vice president by Suburban and covered under the plan upon his return to work full time, combined with (b) failing to rehire him and re-elect him vice president after he returned to work with a doctor's release to work full time, has convinced this Court that there is a genuine issue of fact as to the defendants' motives and intent in obtaining Boesl's resignation. Therefore, summary judgment is inappropriate for Count I.

### 4. *Count II*

■ Count II alleges breach of fiduciary duty in violation of ERISA. 29 U.S.C. §§ 1104(a) and 1109. Defendants move for summary judgment, claiming that the recent Supreme Court decision, *Massachu-*

*setts Mutual Life Insurance Co. v. Russell,* —— U.S. ——, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), does not authorize awards for damages to beneficiaries, only to the plan, under § 1109. Defendants are correct insofar as plaintiff claims relief only under § 1109. However, plaintiff specifically claims relief under both § 1109 and § 1104. *Russell* did not discuss the possibility of a beneficiary's right to damages under § 1104(a). *Russell,* 105 S.Ct. at 3095 (Brennan, J., concurring).

§ 1132(a) provides in pertinent part:

A civil action may be brought—

. . . . .

(3) by a *participant, beneficiary,* or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) *to enforce any provisions of this subchapter* or the terms of the plan ... (emphasis added)

29 U.S.C. § 1132.

Section 1104 is one of the provisions of this subchapter. Therefore, a suit may be brought under § 1132 by a participant or beneficiary to enforce § 1104. Defendants have given no reason to dismiss a claim for relief under § 1104(a) and this Court finds none. Therefore, defendants' motion to dismiss Count II is denied.

### 5. *Count III*

Plaintiff alleges in Count III violations of § 1109 and § 1105. 29 U.S.C. § 1105(a) provides:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 404(a)(1) [29 U.S.C. § 1104(a)(1) ] in the administration

of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

Defendants move for summary judgment on this count for the same reason as in Count II, arguing that § 1109 claims do not give beneficiaries a right to damages. But defendants have not responded to the fact that Count III states a claim under § 1105 in conjunction with § 1109. For this reason, and the reasons stated for denying defendants' motion as to Count II, defendants' motion for summary judgment under Count III is also denied.

### 6. *Counts IV, V and VI*

Counts IV, V, and VI allege that defendants interfered with the protected rights of Boesl, in violation of 29 U.S.C. § 1140. That section provides in pertinent part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. ... The provisions of Section 502 [29 U.S.C. § 1132] shall be applicable in the enforcement of this section.

Defendants seek summary judgment on these counts for two reasons: (1) there was no violation of § 1140; and (2) § 1140 does not impose liability on fiduciaries.

As to the first claim, if plaintiff's allegations concerning the conduct of the defendants are proven, there will indeed be a violation of § 1140. Granting the plaintiff all reasonable inferences from the materials submitted, the Court finds that defendants are not entitled to judgment as a matter of law.

Defendants' second claim rests on an incorrect interpretation of § 1140. A plain reading of § 1140 reveals that it imposes

liability on any "person" that interferes with rights to which an employee is entitled under a benefit plan, whether that "person" is an individual, a corporation, or a fiduciary. *See* 29 U.S.C. § 1002(9). Therefore, defendants' motion for summary judgment as to Counts IV, V, and VI is denied.

### 7. *Count VII*

Count VII alleges common law fraud. Defendants seek summary judgment on the ground that state law claims are preempted by ERISA.

> 29 U.S.C. § 1144 provides in pertinent part:
>
> ... [T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144.

Plaintiff claims that defendants' conduct caused her to lose the proceeds of a life insurance policy, which does not come under the definition of an employee benefit plan. The policy, worth $25,000, provided in part:

> The insurance of any Certificateholder under this Policy will terminate on ... [t]he date of termination of Certificateholder's employment or active service.

(Defendants' Ex. U.)

■■■ Plaintiff claims that, but for defendants' fraudulent conduct in procuring Boesl's resignation, he would have been covered under the policy, and she would have received $25,000. If the life insurance was not an employee benefit plan, ERISA will not preempt plaintiff's common law fraud claim.

Under the clear language of 29 U.S.C. § 1002(1), life insurance benefits are included within the definition of an "employe benefit plan," and therefore preempted under § 1144 unless exempted under another statute. Plaintiff asserts that the life insurance is exempt under § 1003 because the policy is "unfunded" by Suburban. 29

U.S.C. § 1003(b) provides in part that the provisions of ERISA "shall not apply to any employee benefit plan if— ... (5) such plan is an excess benefit plan (as defined in section 1002(36) of this title) and is unfunded."

The life insurance policy in dispute is a term life insurance policy with Maccabees Mutual Life Insurance Company, and was issued to Boesl, as well as other Suburban employees, on October 1, 1983. (Defendants' Ex. U.) Suburban paid premiums to the third party Administrator, Benefit Administrative Systems, who would in turn send the premiums to Maccabees. The life insurance, however, was not self-funded like the medical insurance.

All whole-life insurance policies which have a cash value with premiums paid in part by corporate contributions to an insurance firm are funded plans. *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1214 (8th Cir.1981), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). There is no need to distinguish between a "whole-life" and "term life" policy to determine whether it is funded by the employer.

Therefore, the Court finds that the life insurance policy is funded by Suburban, and thus finds no need to determine whether it is an "excess benefit plan" under § 1002(36). Since the life insurance policy is not exempt under § 1003(b), the policy is included within the definition of an employee benefit plan under § 1002(1). Since the fraud that plaintiff alleges relates to the life insurance policy, and therefore also relates to an employee benefit plan, the claim for fraud is preempted by ERISA. Plaintiff has failed to respond to defendants' motion regarding back pay and medical benefits under Count VII. Therefore, defendants' motion for summary judgment is granted as to Count VII.

### 8. *Count VIII*

Count VIII is based on § 1015 of Ill.Rev. Stat., ch. 40, which provides:

> The expenses of the family and of the education of the children shall be chargeable upon the property of both husband and wife, or either of them, in favor of

creditors therefor, and in relation thereto they may be sued jointly or separately.

 Section 1015 is commonly referred to as the Family Expense Statute, which allows one spouse to maintain a cause of action against a tortfeasor for injuries to the other spouse for which the suing spouse has become liable under § 1015. *Brown v. Metzger*, (1983), 74 Ill.Dec. 405, 455 N.E.2d 834, 118 Ill.App.3d 855, *aff'd*, 83 Ill.Dec. 344, 470 N.E.2d 302, 104 Ill.2d 30 (1984). Claims under this section are derivative and depend on the establishment of defendants' liability for the injuries to the other spouse. *Id.* Therefore, defendants would be liable to plaintiff Sharon Boesl under the Family Expense Statute to the same extent as they are proven liable to Peter Boesl. Accordingly, summary judgment on Count VIII is denied.

### 9. *Back Pay*

 Plaintiff makes a claim for Peter Boesl's back pay from March 1, 1984 to September 12, 1984. Defendants argue that Boesl quit voluntarily on February 28, 1984, and therefore he is not entitled to back pay. Plaintiff alleges that defendants' refusal to renew Boesl's independent contractor's agreement constituted a constructive discharge. The Court finds that there is a genuine issue of material fact whether Boesl quit or was discharged.

 If an employee's discharge is found to be unlawful, the court has the equitable power under ERISA to put the employee in the same position which he enjoyed prior to the discharge. *Bittner v. Sadoff & Rudoy Industries*, 490 F.Supp. 534 (E.D.Wis.1980). This equitable remedy includes awarding the employee back pay, reinstatement, restitution of his forfeited employee benefits, and any other relief necessary to make him whole. *Id.* Therefore, since the plaintiff alleges sufficient facts to survive summary judgment regarding his discharge, summary judgment is likewise inappropriate on the question of back pay.

### 10. *Life Insurance*

As discussed earlier, Boesl was the certificateholder of a life insurance policy through Maccabees in the amount of $25,-000. The policy provided in part:

> The insurance of any Certificateholder under this Policy will terminate on ... [t]he date of termination of Certificateholder's employment or active service.

(Defendants' Ex. U.)

Plaintiff claims that, but for defendants' misconduct in procuring Boesl's resignation, Boesl would have been covered under the policy, and plaintiff would have received $25,000. Defendants argue that Boesl's termination was voluntary, and therefore Boesl voluntarily relinquished his rights under the policy. As found above, this question involves a genuine issue of material fact and summary judgment is inappropriate.

### 11. *Punitive Damages*

Plaintiff seeks $1.5 million in punitive damages for each count in her complaint. The sole question before the court is whether a beneficiary may recover punitive damages for violations of ERISA. The Supreme Court answered this question in the negative in *Massachusetts Mutual Life Insurance Co. v. Russell*, —— U.S. ——, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), but limited its holding to claims under § 1109. The Seventh Circuit Court of Appeals followed the *Russell* holding in *Pokratz v. Jones Dairy Farm*, 771 F.2d 206 (7th Cir.1985), but similarly restricted its holding to § 1109 claims.

Other circuits have split on the issue, with a majority denying punitive damages. *See, e.g., Sommers Drug Stores v. Corrigan Enterprises, Inc.*, 793 F.2d 1456 (5th Cir.1986) (denying punitive damages under both § 1109(a) and § 1132(a)(3)); *Powell v. Chesapeake & Potomac Telephone Co.*, 780 F.2d 419 (4th Cir.1985) (denying punitive damages); *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208 (8th Cir. 1981) (dictum that punitive damages not recoverable under ERISA).

■ The omission of an allowance for punitive damages under ERISA provides "strong evidence that Congress did not intend to authorize [remedies] that it simply forgot to incorporate expressly." *Russell*, 105 S.Ct. at 3093. This court agrees with Judge Grady that "after *Russell*, punitive damages are probably never recoverable by an ERISA participant or beneficiary." *Wilson v. Pye*, No. 85 C 6341, slip opinion, (N.D.Ill. Jan. 3, 1986) [Available on WEST-LAW, DCTU database]. Similarly, Judge Leighton denied a beneficiary's punitive damages claim under §§ 1104, 1106, and 1109, stating that "the court will not presume authorization of an award for punitive damages." *Wilson v. Allegheny International, Inc.*, No. 83 C 9254, slip opinion, (N.D.Ill. Nov. 13, 1985) [Available on WESTLAW, DCTU database]. Therefore, defendants' motion for summary judgment to bar recovery of punitive damages is granted.

### 12. *Exhaustion of Administrative Remedies*

■ Defendants' final argument in his motion for summary judgment is that plaintiff failed to exhaust her administrative remedies before filing suit. ERISA is silent as to whether exhaustion of administrative remedies is a prerequisite to bringing a civil action. *Kross v. Western Electric Company*, 701 F.2d 1238, 1244 (7th Cir.1983). Rather, application of the exhaustion doctrine in ERISA cases by requiring a claimant to exhaust administrative remedies prior to bringing suit is a matter within the discretion of the trial court. *Id.* Two exceptions to the exhaustion requirement exist: (1) when resort to such procedures would be futile; and (2) when a claimant is wrongfully denied meaningful access to administrative procedures. *Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); *Lieske v. Morlock*, 570 F.Supp. 1426, 1429 (N.D.Ill.1983). In this case, both exceptions apply.

■ Regarding the first exception, it appears that any administrative appeal of Brady's decision to deny coverage under Suburban's self-funded plan would have been futile. One would not expect Boesl to appeal until he found out that he had no source of medical insurance. This occurred on June 21, 1984, when he was informed by Maccabees that the conversion policy which was purchased for him by Suburban would not cover any of his expenses after January 1, 1984. By June 21, Boesl had long since resigned work as a Suburban employee. Any appeal after January 1984 would certainly have been futile, because as a nonemployee, Boesl was not eligible under the self-funded plan.

As to the second exception, it appears that Boesl and plaintiff were wrongfully denied meaningful access to administrative procedures. Defendants do not claim that either was informed how to file an appeal, or even told an appeal was possible. In the Booklet circulated to employees, there is no mention of an administrative appeals process. (Defendants' Ex. K.) In fact, the only remedy described in the Booklet is the following:

> If you are improperly denied a welfare benefit in full or in part, you have a right to file suit in a Federal or State Court.

(Defendants' Ex. K, p. 28.) Plaintiff pursues this remedy. Therefore, plaintiff is excused for failing to exhaust administrative remedies, and defendants' motion for summary judgment is denied.

### III. CONCLUSION

For the reasons stated above, plaintiff's motion to strike is denied except as to footnotes 2 and 3 of defendants' memorandum in support of their motion to strike. Defendants' motion to strike plaintiff's affidavits is denied. Defendants' motion for summary judgment is granted only as to Count VII of plaintiff's complaint and plaintiff's claim for punitive damages under all counts. Defendants' motion for summary judgment as to Counts I–VI and Count VIII is denied.

IT IS SO ORDERED.