**CITY OF CLINTON, ILLINOIS,**
**Plaintiff-Appellant,**

v.

**Gene R. MOFFITT, Hoopeston I, and**
**Travelers Indemnity Co.,**
**Defendants-Appellees.**

No. 86–2024.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1986.
Decided Feb. 19, 1987.

Stephen R. Myers, Clinton, Ill., for plaintiff-appellant.

Kevin C. Travis, Griep & Swartzman, Kansas City, Mo., for defendants-appellees.

Before WOOD and POSNER, Circuit Judges, and WILL, Senior District Judge.[*]

POSNER, Circuit Judge.

■ The district court, rejecting a recommendation by the magistrate, granted summary judgment for the defendants in this breach of contract suit, and the plaintiff appeals. The basis of federal jurisdiction is diversity of citizenship. 28 U.S.C. § 1332. The plaintiff, the City of Clinton, Illinois, is a municipal corporation of Illinois, and for diversity purposes a municipal corporation is treated just like a regular business corporation. *Moor v. County of Alameda,* 411 U.S. 693, 717–18, 93 S.Ct. 1785, 1799–1800, 36 L.Ed.2d 596 (1973); *Illinois v. City of Milwaukee,* 406 U.S. 91, 97, 92 S.Ct. 1385, 1389, 31 L.Ed.2d 712 (1972). The principal defendant, Moffitt (a real estate developer), is a citizen of Missouri. A Missouri general partnership in which he is a partner is also a defendant, but the citizenship of a partnership is irrelevant to diversity. *Great Southern Fire Proof Hotel Co. v. Jones,* 177 U.S. 449, 456, 20 S.Ct. 690, 693, 44 L.Ed. 842 (1900); *Elston Investment, Ltd. v. David Altman Leasing Corp.,* 731 F.2d 436 (7th Cir.1984); 13B Wright, Miller & Cooper, Federal Practice and Procedure § 3630 (2d ed. 1984). But since all the other partners are citizens of Missouri as well as Moffitt, and the remaining defendant is not a citizen of Illinois either, the requirement of complete diversity is satisfied. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Fidelity & Deposit Co. v. City of Sheboygan Falls,* 713 F.2d 1261, 1264 (7th Cir.1983). So there is federal jurisdiction.

■ The parties agree that Illinois contract law governs the substantive issues. Both the parties and the district judge say that Illinois contract law governs *because* this is a diversity suit, but that is

not accurate. Because it is a diversity suit, Illinois law governs, but it is the whole Illinois law that governs, including Illinois' conflict of law rules. *Casio, Inc. v. S.M. & R. Co.,* 755 F.2d 528, 530–31 (7th Cir.1985). If those rules pointed to the contract law of another state, that other state's law would govern. But the parties agree that Illinois contract law governs, and that is all that is necessary to make it govern. Litigants can, by stipulation, formal or informal, agree on the substantive law to be applied to their case, within broad limits not exceeded here. *Id.* at 531.

■ With these preliminaries out of the way we turn to the merits. The district judge thought it clear from the terms of the parties' contract (which was in writing) that Moffitt did not make the promise that the City of Clinton says he broke. If the judge was right in this, then he was right to grant summary judgment for Moffitt. "If a contract is in writing, is unambiguous and contains no uncertain terms, interpretation of the contract is a question of law for the court." *Nerone v. Boehler,* 34 Ill. App.3d 888, 890–91, 340 N.E.2d 534, 536 (1976). See also *National Tea Co. v. Commerce & Industry Ins. Co.,* 119 Ill.App.3d 195, 200–01, 74 Ill.Dec. 704, 708–09, 456 N.E.2d 206, 210–11 (1983). The question whether a contract is ambiguous is itself a question of law, *Wilson v. Illinois Benedictine College,* 112 Ill.App.3d 932, 937, 68 Ill.Dec. 257, 263, 445 N.E.2d 901, 907 (1983), and we give substantial weight to interpretations of state law by a federal district judge sitting in the state whose law is in question, *Goldstick v. ICM Realty,* 788 F.2d 456, 466 (7th Cir.1986). This precept is especially *apropos* in a case such as this where the district judge is a former judge of that state's courts. But we do not merely rubber-stamp the district judge's determination of state law, and where (as in this case) we find ourselves in strong disagreement with the determination, we must reverse.

Moffitt wanted to build a shopping center on land he owned in the City of Clinton,

[*] Hon. Hubert L. Will of the Northern District of Illinois, sitting by designation.

Illinois. To improve access to the shopping center he made a contract with the city by which they agreed to split the cost of building a new street that would run north and south along the western edge of the shopping center. The street would connect Route 54, which runs along the southern edge of the shopping center, and Route 10, which runs roughly parallel to Route 54 north of the shopping center. The shopping center ends about half way between Route 54 and Route 10, and the deal was that Moffitt would build the part of the new street that ran north along his property line and the city would build the rest, linking up with Route 10 and thus completing the connection between the two highways.

The city let contracts for building the street, including the intersections with Route 10 at the north end of the street and Route 54 at the south end. The total cost with the intersections came to $330,000 (we round off all dollar figures to the nearest $1,000). The city billed Moffitt $204,000, covering all the work south of the shopping center's northern border. Moffitt paid only $99,000, contending that the rest of the $204,000 was for the intersection with Route 54 and that his contract with the city had placed that cost on the city.

The contract says that Moffitt will "pay for the cost of constructing the street north from U.S. Route 54 approximately 520 feet to" the point where the shopping center ends. Moffitt interprets this to mean north from the Route 54 right of way, the northern edge of which was 38 feet beyond the northern edge of the highway itself before the improvements were made. From the right of way to the end of the shopping center is 526 feet; this Moffitt contends is the "approximately 520 feet" to which the contract refers. All the expensive work on the intersection was south of the northern edge of the right of way. Under the city's theory Moffitt must pay the cost of construction from the northern edge of Route 54 itself to the north end of the shopping center, a distance of 564 feet (526 + 38), which he contends is too long to be "approximately 520 feet."

He could be right. Intersection work is a lot less straightforward than straight street work, so that if he agreed to pick up the tab for the intersection of the street with Route 54 as well as the street itself he was buying a pig in the poke. But against this it can be pointed out that before the contract was signed an engineer had given Moffitt an estimate of Moffitt's share of the cost of the street work. The estimate was for $130,000, which included intersection work, as clearly shown on the engineering drawings submitted with the estimate. Now $130,000 is a lot more than $99,000, which is all Moffitt says he owes; and this discrepancy is some evidence for the city's interpretation of the contract. It is also, of course, a lot less than the $204,000 that the city billed him for, but the city says that the cost of constructing the intersection with Route 54 turned out to be unexpectedly great.

 But we are straying beyond the written contract, which we are not allowed to do unless it is ambiguous. Moffitt makes two arguments that it is unambiguous. First he points out that the contract requires him to pay for the cost of constructing "the street," and he contends that "street" doesn't include "intersection," which he regards as an improvement to Route 54. Second, if interpreted to require him to pay for the intersection, the contract would extend the distance for which he must pay from 526 feet to 564 feet, and the second figure cannot be "approximately 520 feet." The second argument does not impress us. The words "approximately 520 feet" could well be intended as descriptive language rather than language defining Moffitt's obligations. Moreover, "approximately" has no fixed meaning, and a deviation of less than 10 percent is not necessarily precluded by the use of so vague a word.

The first argument has some force. Suppose the city, in making the intersection, had built south of the northern edge of Route 54—and apparently it did, by widening the highway southward and adding a third lane in the middle of the highway to

enable eastbound traffic to turn north onto the new street. A powerful argument could be made against the city's being allowed to charge Moffitt for the cost of these improvements. His contractual obligation is limited to the street running north *from* the highway; the third lane is *in* the highway. But the city told us at argument that it isn't trying to collect for any part of the cost incurred south of the northern edge of the highway. It just wants Moffitt to pay for the pavement of the new street from the northern edge of Route 54 rather than from 38 feet farther north, and for the widening of Route 54 northward to make it easier for drivers to turn from the highway into the new street. Certainly the pavement of the new street from the point where it joins Route 54 is easily comprehended within the meaning of "street," and, once this is conceded, it becomes possible to regard the other work north of the previous north edge of Route 54 as a part of Moffitt's undertaking too. The cost of constructing a street might well be thought to include the cost of constructing the equivalent of an access ramp leading to it. A river includes its delta; why cannot a street include a flared portion at the end, designed to make turning in and out of it easier? By this logic, maybe even the cost of the third lane, though constructed south of the northern edge of Route 54, could be viewed as a part of the cost of constructing the new street. But the city is not pressing the point, so neither shall we.

Even if the word "street" excluded the intersection at one end of it, it would not follow that the street did not begin till the northern edge of the highway right of way, 38 feet north of the highway itself. "[S]treet north from U.S. Route 54" doesn't sound to the casual ear like "street north from the right of way that surrounds Route 54." Moffitt's interpretation of the contract requires inserting "right of way of" before "U.S. Route 54." A contract that has to be rewritten in this counterintuitive fashion in order to yield the result reached by the district judge cannot be considered unambiguous. It has the odd consequence that the city pays for the first 38 feet of the new street, Moffitt for the next 526, and the city for the remainder. This is possible, but is hardly compelled by the language of the contract.

Under Illinois law, if the contract is ambiguous, its interpretation is still an issue of law rather than one of fact if any extrinsic evidence (evidence beyond the words of the written contract itself) bearing on that interpretation is undisputed. *Nerone v. Boehler, supra,* 34 Ill.App.3d at 891, 340 N.E.2d at 537; *Ridenhour v. Mollman Publishing Co.,* 66 Ill.App.3d 1049, 1051, 23 Ill.Dec. 36, 37–38, 383 N.E.2d 803, 804–05 (1978). Whether the extrinsic evidence in this case is undisputed, and if so (or not) how the contract should be interpreted, are questions for the district court to decide in the first instance; the court erroneously excluded all the extrinsic evidence from consideration, believing the contract to be clear. The evidence that the district judge refused to consider suggests that the parties, noticing that the shopping center ended roughly halfway up the proposed new street, decided that Moffitt would in effect be responsible for the lower (southern) half, including the intersection with Route 54, and the city for the upper half, including the intersection with Route 10. Such an interpretation, under which the city would win, may be right or wrong, but it is not ruled out by unambiguous contractual language.

Only if it turns out that the extrinsic evidence is disputed need there be a trial; but summary judgment should not have been granted on the basis of the contractual language alone. We point out in this connection that the magistrate and district judge differed on whether the contract was ambiguous, that the judge first adopted the magistrate's recommendation and then changed his mind, and that he did so (it appears) without the benefit of oral argument on the motion for summary judgment. While none of these factors proves that the contract really is ambiguous, they reinforce our doubts that the parties' dispute can be resolved summarily, at least on the basis of the contract alone. We add that we found argument in this case extremely helpful in focusing the issues, and

it is possible that the district judge would have come to the same conclusion as we if he had held argument before ruling on the motion for summary judgment.

REVERSED AND REMANDED.

WILL, Senior District Judge, dissenting.

There is only one issue in this case: whether the preannexation agreement between the city and Moffitt is ambiguous. If, as the majority concludes, the agreement is ambiguous, then the district court erred in granting Moffitt's motion for summary judgment. If, however, the agreement is clear, we must affirm the district court's ruling. Because I find that the agreement, when combined with the undisputed physical facts, clearly defines Moffitt's obligations regarding the construction of the new north-south street, I would affirm the district court's ruling.

The allegedly ambiguous paragraph in the preannexation agreement provides:

Gene Moffitt would donate his portion of the land shown on the site plan and would *pay for the cost of constructing the street north from U.S. Route 54 approximately 520 feet* to a point on the plan where the east line of the subject property appears north on the west right-of-way line of the proposed street. Included in the street construction at that point would be the storm sewer as shown on the plan. *Concurrently with the construction of the approximate 520 linear feet of street and storm sewer by Gene R. Moffitt, the City would construct the remaining portion of the street and storm sewer.* (Emphasis added).

The majority works hard to manufacture ambiguity by proposing alternate interpretations of this paragraph. For example, the majority claims that the paragraph is subject to two reasonable interpretations because (1) the word "street" could include intersection, and (2) that even if the word "street" excludes the intersection, the "street north from U.S. Route 54 approximately 520 feet" could still begin at a point within the Route 54 right of way.

The majority claims that Moffitt's interpretation of the contract requires inserting "right of way of" before "U.S. Route 54," and that this reading of paragraph 3 is "counterintuitive." Since appeals to "intuition" are little more than assertions, they can be rebutted only by announcing different intuitions. Let me therefore try to move the discussion from intuition and mere assertion to rational analysis.

It may be that the majority finds Moffitt's obligations unclear because it extracts the four word phrase "from U.S. Route 54" from the middle of a sixty word sentence. This phrase is not at all ambiguous if read in context. The sentence says Moffitt is obligated to "pay for the cost of constructing the *street north from U.S. Route 54 approximately 520 feet....*" The actual distance from the north right of way line of U.S. Route 54 to the northeast corner of Moffitt's property is 526 feet, six feet more than the 520 feet mentioned in the contract. Measuring from the northern edge of the pavement of Route 54 would add 38 more feet, for a total not of 526 feet but 564 feet. It seems clear to me that 564 feet is simply too long to be "approximately 520 feet." The majority finds this argument unimpressive because it claims (1) that "approximately" has no fixed meaning, and a deviation of less than 10% is not precluded by use of so "vague" a word, and (2) that the suspect language (from U.S. Route 54 approximately 520 feet) could have been intended as descriptive rather than obligatory in nature.

Neither of these points is, I believe, particularly compelling. To begin with, one need not resort to artificial and pedantic distinctions between descriptive and obligatory language to resolve this case. Descriptive language is often used in an obligatory context. If one were to agree, for example, to build a house made of cedar, the word "cedar," while descriptive, would function to describe an obligation. I doubt that the lawyer has been born who would defend the building of a pine house under such a contract by asserting the descriptive use of "cedar."

Second, the word "approximately" in this context obviously means something like "about" 520 feet, or "around" 520 feet, or

"520 feet more or less." This language could include slightly more than 520 feet, but it could hardly refer to a linear figure that corresponds to a tremendously greater percentage of work, material, and cost. The majority says "approximately" could cover an additional 44 feet to the 520, a deviation, they assert, of less than 10 percent. But the contract was not to build a pencil thin line of pavement; it was to build an *area* of pavement measured in square feet. Because the 38 foot intersection in question has sides that fan outward from the width of the 526 feet of street to the point it joins the existing pavement of U.S. 54, the added square footage is in the neighborhood of over 15 percent more than that comprehended by the 520 feet to which the contract refers. And the cost of this additional 38 feet is much more than 10 percent—it is actually over 100 percent greater than the cost of Moffitt's committed 526 feet. Here the deviation amounts to an additional $110,808 beyond the $98,-808 that Moffitt has already paid for the construction of the 526 feet of the new north-south street.

Third, the suggestion that the parties intended to include as part of the new street, the 38 feet of flared pavement solely within the right of way of U.S. Route 54 is inconsistent with common usage as well as basic real estate law. If, for example, the new street were privately owned, it would commence at the north right of way line of U.S. 54 and the intersection between it and Route 54 lying within the latter's right of way clearly would not be owned by the owner of the new street regardless of who paid for its construction. Similarly, in the absence of any language in the agreement suggesting that the parties intended "street" to include the intersecting pavement lying entirely within the Route 54 right of way, it seems obvious to me that they understood the new "street" referred to the pavement commencing north of the Route 54 right of way and running north "approximately 520 feet" (526 feet to be exact) adjoining Moffitt's property.

Moreover, the majority's suggestion that "street north from U.S. Route 54 approximately 520 feet" might be read to include the enlarged intersection incorporating,

among other things, a new third turn lane is almost fanciful. In support of this interpretation the majority argues that "a river includes its delta" ergo a street can include the flared portion of the intersection leading to it. I'm not clear as to the basis for the assertion that a delta is part of the river. It seems to me that it is equally arguable that the Mississippi delta, for example, is part of the Gulf of Mexico. More important, however, a delta, like an intersection, is commonly understood to be a separate and distinct entity. If the contract here had been for dredging approximately 520 feet of the Mississippi River, I doubt that anyone would be contending that it included dredging a portion of the delta.

One final point. The majority argued that there may be evidence that the parties, noticing that the shopping center ended roughly halfway up the proposed new street, decided that Moffitt would in effect be responsible for the lower (southern) half, including the intersection with U.S. Route 54, and the city for the upper half, including the intersection with Route 10. The pleadings and the undisputed evidence suggest no such thing. At the time the city filed its original complaint, it claimed that Moffitt owed one half the total cost of constructing the entire north-south street (over 1,000 feet), plus one half the cost of constructing the intersections on both U.S. 54 *and* Route 10. Later the city changed its mind claiming that the agreement did not require Moffitt to pay half the cost of the intersections on *both* highways; rather, Moffitt was required to pay *none* of the Route 10 intersection costs ($36,899), but *all* of the significantly more expensive U.S. 54 intersection costs ($110,801), plus again *half* the cost of the entire north-south street. At oral argument, as the majority points out, the city apparently again changed its position arguing that it just wants Moffitt to pay, in addition to the $98,808 he has already paid for the entire 526 feet of street adjoining his property, an undisclosed amount for the intersection of the new street with the northern edge of the pavement of Route 54, rather than from 38 feet farther north, including the widening of the intersection with Route 54

northward. This shifting of the city's position shows that the city did not intend or contend at any time that it would be responsible for the north half and the north intersection of the new street and Moffitt for the south segment and the south intersection. Moffitt, on the other hand, has consistently understood the agreement to require him to pay for approximately 520 feet of street which he has done.

The city may well and understandably be unhappy at the total cost of the street and the intersections with Routes 10 and 54 and with the agreement that Moffitt would pay the full cost of constructing the approximately 520 feet of street adjoining his property while the city would pay for the "remaining portion of the street." It's obvious that the project became more expensive than originally anticipated with the inclusion of a third turning lane, etc., and the city's "remaining portion" became much greater than expected. Hindsight, however, is no basis for attempting to rewrite an agreement which has turned out to be unfavorable to one party.

In sum, I find the contract between Moffitt and the city free from ambiguity. Because Moffitt has already performed his obligations under the contract, I would affirm the district court's ruling.