ILLINOIS ROCKFORD CORPORATION, Plaintiff-Appellant, v. NYMAN DICKMAN et al., Defendants-Appellees.

First District (5th Division) No. 86—2991

Opinion filed March 4, 1988.—Rehearing denied April 7, 1988.

114

Gary A. Weintraub, of Chicago, for appellant.

A. Bradley Eben, of Chicago, for appellee Leon Dickman.

John P. Coleman, of Chicago, for appellee Nyman Dickman.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff, Illinois Rockford Corporation, appeals from a trial court order dismissing with prejudice its complaint against defendants, Nyman Dickman, Leon Dickman, and Henry Knass. Plaintiff, a limited partner, sued defendants, the general partners, for alleged breaches of fiduciary and contractual duties arising under a written limited partnership agreement. The agreement concerned the development of real estate near Arlington Heights, Illinois.

Plaintiff's initial complaint was filed on April 2, 1979, prior to expiration of the statute of limitations applicable to contract actions. (Ill. Rev. Stat. 1979, ch. 83, par. 17 (now Ill. Rev. Stat. 1985, ch. 110, par. 13—206).) Defendant Knass was never served and defendant Nyman Dickman died prior to trial. The case proceeded against defendant Leon Dickman and the estate of Nyman Dickman. In entering judgment against plaintiff, the trial court stated that numerous breaches had occurred, but apparently based its decision to dismiss plaintiff's complaint on the equitable theories of *laches* and ratification. No findings of fact or conclusions of law were made.

On appeal, plaintiff contends that the trial court erred in applying the doctrine of *laches* to an action at law, and further, that plaintiff did not ratify defendants' breaches. Defendants assert that although *laches* may not apply, their affirmative defenses of ratification, waiver, and estoppel are sufficient bases to sustain the trial court's dismissal of the case. Defendants also contend that plaintiff's failure to prove damages is relevant to the propriety of the dismissal. The following facts underlie the relationship between the parties.

In December 1968, Zev Karkomi (in association with Arnold Kramer) executed a contract (Stavros contract) to purchase five parcels of real estate near Arlington Heights. In March 1969, the Dickmans and Knass, under a land trust created for the purpose of acquiring and developing a portion of the land, entered into a lease agreement with option to purchase the land with Karkomi/Kramer.

Karkomi was lessor, American National Bank & Trust Company of Chicago (Bank) was lessee (as trustee), and attorney Joseph A. Rosin was the sole beneficiary of the land trust. This lease agreement was never recorded. In April 1969, Arlington Associates Limited Partnership was formed, with defendants as general partners and with nine limited partners, including plaintiff, Illinois Rockford. The general partners were to construct approximately 800 apartment units on the land at the rate of one parcel per year. This agreement was recorded in October 1969. Plaintiff contributed $50,000 to the partnership for which it would receive a 7% partnership interest. Thirty percent of the $50,000 was considered a loan (with 7½% interest) to the general partners. The partnership agreement provided that the beneficial interest in the land was to be assigned to the partnership upon payment of the limited partners' stipulated contributions and, further, that defendants would contribute the difference between the amount raised by the limited partners ($325,000) and $500,000. The beneficial interest was never assigned to the partnership and only $25,000 was contributed by one of the general partners. No construction was ever commenced.

The sum raised ($350,000) was paid to Karkomi as a security deposit required under the land trust lease agreement. Karkomi used $274,000 to acquire title in his name to one parcel of land (parcel 4). Disagreements between Zarkomi and defendants led to the Bank being notified in September 1970 that the lease was in default. In November 1970 and February 1971, Arlington Associates held two meetings of the general and limited partners. The parties disagree as to what occurred at these meetings. Defendants claim that Rosin informed the partners that the only feasible alternative to the problems was to end the leasing agreement and to form a new arrangement between Karkomi/Kramer and Arlington Associates. Defendants also claim that Kramer outlined details of a new partnership with Karkomi/Kramer as general partners and Arlington Associates as a limited partner and that none of the limited partners expressed disapproval of the proposal. Jerrold Ruskin, then vice-president of Illinois Rockford, alleges that no specific details regarding the new arrangement were given to the limited partners.

On February 16, 1971, two documents were executed allegedly terminating the land trust lease. Karkomi, Kramer, the Bank, Rosin, the Dickmans, and Arthur Strilkey (an associate of Karkomi/Kramer) signed the agreement with Knass authorizing the signing. Although provisions were made for the signatures of the limited partners, these were not obtained. Simultaneous to the termination, a new lim-

ited partnership, Three Lakes Subdivision Limited Partnership, was created. Karkomi assigned the money paid to him by Arlington Associates to Three Lakes as Arlington Associates' contribution. Under the Three Lakes agreement, the general partner was a corporation owned by Karkomi and Kramer. Limited partners were listed as Leon Dickman and Karkomi. Karkomi was to assign his interest in the Stavros buy-sell real estate contract to Three Lakes and also his beneficial interest in a land trust which held title to parcel 4.

While the above transactions were occurring, neither Karkomi nor Kramer told the present defendants that Karkomi had defaulted on the Stavros contract and was being sued in circuit court by the sellers. Title to parcel 4 was never conveyed to Three Lakes. Eventually, Kramer sold parcel 4 for $770,000; none of this amount ever reached the Arlington Associates partners.

The case involved in this appeal is just one of many lawsuits arising out of these transactions. In 1974, a circuit court of Cook County entered judgment in favor of some of the limited partners (not including Illinois Rockford) who had sought rescission and return of their contributions. The suit was grounded in fraud for violations of State securities law. Another circuit court found that the lease termination agreement was void for nonexecution by the limited partners in a declaratory judgment action filed by the defendants in the present case. In that case, defendants had sought to have the agreement declared void on the basis of fraud. Arlington Associates also succeeded in obtaining $75,000 from Rosin (and $5,000 from the Dickmans) in a legal malpractice action; Illinois Rockford gave written consent to this settlement. Subsequently, defendants, as general partners of Arlington Associates, brought suit against Three Lakes, Kramer, Karkomi, and Strilkey in Federal district court alleging violation of State and Federal securities laws. For that purpose, the court found that the lease termination agreement was valid. Karkomi settled with Arlington Associates for $50,000, of which Illinois Rockford received approximately $7,000 without prejudice to its rights in the present case. A judgment entered against Kramer in excess of $850,000 has never been collected.

■ It is self-evident that the doctrine of *laches* is inapplicable to this action. In its complaint, plaintiff sought money damages for breaches of the partnership agreement, recovery on the loan provisions of the agreement, and damages for defendants' failure to give certain notices and for breach of their fiduciary duties. Amended complaints also sought damages arising from breaches of the agreement. Thus, this is clearly an action at law. (See *People ex rel.*

*Reeder v. Reeder* (1985), 131 Ill. App. 3d 841, 476 N.E.2d 50.) Moreover, the record indicates no showing of prejudice caused by the delay to defendants, an element necessary in order to apply the doctrine of *laches* instead of the appropriate statute of limitations. (See *Beckham v. Tate* (1978), 61 Ill. App. 3d 765, 378 N.E.2d 588.) Clearly, *laches* is inapplicable to this action.

However, defendants are correct in stating that a reviewing court can affirm a judgment if it is justified by law for any reason or ground appearing in the record irrespective of the trial court's grounds or reasoning. (See 2 Ill. L. & Prac. *Appeal and Error* §633 (1953); see also 107 Ill. 2d R. 366.) But after careful examination of the record, we do not find an adequate basis for the trial court's decision and therefore must reverse and remand the cause for the following reasons.

That there were breaches of the 1969 limited partnership agreement by defendants appears to be undisputed. The real issue is whether there is merit to defendants' defenses of ratification, waiver, and estoppel.

■ Defendants contend that the lease termination agreement, held to be valid by the Federal court, was binding on plaintiff. And, even if the execution of the termination agreement was not valid, plaintiff confirmed it by not objecting to it at the February 1971 meeting or later. Plaintiff asserts that when ratification occurs in principal-agent relationships, the principal is the one who must ratify an agent's act, and in this case, defendants were agents of the partnership and not of the limited partners. Plaintiff additionally claims that ratification is not applicable to breaches of contract; it is used only as to the issue of whether a contract is voidable, an issue we are not concerned with here. We agree with plaintiff.

■ First, the Federal court that determined the lease termination agreement was valid was concerned with securities fraud, not breach of contract and, further, the suit was between different parties—defendants, as representatives of Arlington Associates, sued Kramer and others. The issue in our case is whether the termination agreement constituted a breach by defendants of the limited partnership agreement. This is a question that must be determined by the trier of fact. Furthermore, it is fundamental agency law that a principal can ratify an agent's acts either expressly or impliedly, when the agent has acted outside the scope of his authority. (*Hofner v. Glenn Ingram & Co.* (1985), 140 Ill. App. 3d 874, 489 N.E.2d 311.) However, in the present case, the general partners (defendants) were the agents of the partnership. A limited partner is not a principal in

the business or transactions of a partnership (*Kramer v. McDonald's System, Inc.* (1979), 77 Ill. 2d 323, 396 N.E.2d 504), and therefore plaintiff could not ratify the acts of defendants. Moreover, as a limited partner, it did not have a right to void the termination agreement. Plaintiff did not sign the agreement and, as a limited partner, had no control over transaction of business by the partnership. The facts of this case do not support ratification. At best, it reflects that plaintiff may have had some knowledge of some of the breaches in 1971 when the lease termination agreement was executed by defendants.

 █ Nor do the facts support a finding of waiver or estoppel. Waiver and estoppel are two separate equitable defenses. They must be proved by the party asserting them by clear, unambiguous evidence. (*Slavis v. Slavis* (1973), 12 Ill. App. 3d 467, 299 N.E.2d 413.) Estoppel arises when one party changes his position in reliance on the word or conduct of another and subsequently suffers harm. (*Farmers & Merchants Bank v. Davis* (1987), 151 Ill. App. 3d 929, 503 N.E.2d 565.) Before estoppel can be found there must be prejudice resulting to the party claiming it since estoppel arises to prevent injustice. (*Budget Premium Co. v. American Casualty Co.* (1985), 136 Ill. App. 3d 682, 483 N.E.2d 389.) On the other hand, waiver involves the intentional relinquishment of a known right. *Village of Orland Park v. First Federal Savings & Loan Association* (1985), 135 Ill. App. 3d 520, 481 N.E.2d 946.

██ In support of their assertions of waiver and estoppel, defendants allege that Ruskin as plaintiff's representative had knowledge that the lease was essential to Arlington Associates; knew of the difficulties with the lease and the subsequent default notice; knew that litigation would ensue unless a new arrangement was formed and that the lease would have to be terminated as part of the new arrangement; and that by March 24, 1971, Ruskins knew that the new arrangement had been consummated and did nothing about it. Defendants concede that, as to certain of these allegations, Ruskin's testimony differs from that of Rosin and Leon Dickman. However, even considering these assertions as true, they form no basis for estoppel or waiver.

There is no indication in the record that Ruskin's alleged knowledge either induced defendants to terminate the lease and enter into a new arrangement, or that they were substantially prejudiced by Ruskin's inactivity. Defendants also claim that plaintiff's acceptance of approximately $7,000 as its share of the settlement with Karkomi in the Federal suit against Kramer and others operates to estop

plaintiff from now denying the validity of the lease termination agreement. However, as noted before, the issues litigated and the parties involved in the Federal case and the present case are not the same. Furthermore, plaintiff accepted its portion with the expressed proviso that it was doing so without prejudice to its right to proceed against defendants for breaches of the partnership agreement. Such an express reservation of rights precludes a finding of an intentional relinquishment of a known right. Accordingly, we find no waiver by plaintiff on the facts of this case.

■ Defendants' argument that plaintiff failed to prove damages is also without merit. The Arlington Associates agreement provided that $15,000 of plaintiff's investment constituted a loan to defendants. Except for the money it received from the Karkomi settlement, plaintiff has not received any other funds, either as a return on its investment or on the loan or any interest thereon. Although judgment was entered against Kramer nearly six years ago, no money has been recovered. Defendants' defense that repayment of the loan was predicated on completion of construction is fallacious when the partnership agreement provided that defendants were to act as the general contractors, a function they failed to perform. The trial court's statement, "and so goes the investment, so goes the loan" contradicts the unambiguous language of the loan provision. Plaintiff has shown that it was damaged at least to the extent of $15,000 plus 7½% interest, accrued from a date to be determined by the trial court.

For the foregoing reasons, this cause is reversed and remanded for a new trial.

Reversed and remanded.

SULLIVAN and PINCHAM, JJ., concur.