**In re Avery Z. ELISCU, Debtor.**

**Bankruptcy No. 87 B 236.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Feb. 1, 1994.

---

Ariel Weissberg, Charles A. Linn, David M. Jankura, Edwin A. Gaussellin, Weissberg and Associates, Ltd., Chicago, IL, for debtor.

Patricia A. Banks, Chicago, IL, trustee of debtor's estate.

Ira P. Goldberg, Ross & Hardies, Chicago, IL, for Nathan Yorke, trustee of related debtors.

## MEMORANDUM OF DECISION AND ORDER

JOHN D. SCHWARTZ, Chief Judge.

The Debtor, Avery Eliscu ("Eliscu"), brought this matter before this court by filing an "Amended Motion of Debtor to Withdraw Waiver of Discharge, for Reinstatement of the Automatic Stay Pursuant to 11 U.S.C. [Section] 362(a), and for the Entry of an Order of Discharge" ("Amended Motion"). Later, after a hearing and order regarding the filing of a supporting memorandum and response thereto, he filed his "Memorandum of Law in Support of Amended Motion to Withdraw Waiver of Discharge" ("Supporting

Memorandum"). The Supporting Memorandum addresses only the discretionary authority of this court to vacate the waiver and the equitable reasons why the court should vacate the order waiving the debtor's discharge.[1] In its conclusion, the memorandum summarizes the requested grounds for the relief the Debtor seeks by stating: "Therefore, in the interest of justice and to promote the primary purpose of the Bankruptcy Code, this Court should exercise its discretion to grant Eliscu's Motion to Vacate the Waiver of his Discharge and enter an Order granting him his discharge." Supporting Memorandum at 9. It is this request for relief that the court addresses.

Two parties filed responses objecting to the Debtor's Amended Motion: Patricia Banks ("Banks"), as the trustee of the Eliscu bankruptcy estate, and Nathan Yorke ("Yorke"), as the trustee of several other legal entities in related bankruptcy proceedings.[2] The facts of this case and the related cases have a long, complex history. The court has reviewed the Amended Motion, Supporting Memorandum, and the other memoranda, being the two responses and Eliscu's reply to the responses, for uncontroverted facts; the exhibits attached thereto, including the relevant settlement agreements, motions to compromise controversies, and the transcripts filed by Eliscu; and the court takes judicial notice of the docket and court files (collectively referred to as the "Record"). The court discusses only those facts it feels are germane to the resolution of this issue.

## BACKGROUND

Eliscu was an officer and shareholder of RSI and SFTT, two companies involved in the transportation industry. In turn, SFTT owned the stock of the remaining Related Debtors. The Related Debtors went into bankruptcy and Yorke ended up as the trustee for all of the Related Debtors. Yorke filed adversary complaints 87 A 1244 through 87 A 1247 seeking to recover property which was alleged to have been fraudulently concealed or transferred to Eliscu or to other entities which Eliscu controlled.

On January 17, 1987, Eliscu filed his voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code, setting forth no assets which could be used to satisfy claims of creditors.[3] Banks was appointed as trustee for the estate. Yorke, as a trustee, filed a complaint objecting to discharge and the dischargeability of a particular debt, adversary number 87 A 1242, on December 31, 1987 ("Yorke Discharge Complaint"). Later, on May 6, 1988, the Atchison, Topeka and Santa Fe Railway Company ("ATSF") filed an objection to discharge and dischargeability pursuant to 11 U.S.C. § 523 and § 727, numbered 88 A 348 ("ATSF Discharge Complaint").

On September 19, 1988, this court conducted a hearing to determine whether Eliscu understood the legal consequences of a general waiver and whether it was his wish to waive a discharge. On September 22, 1988, Eliscu duly executed a Waiver of Discharge ("the waiver"). The signed waiver declares:

### WAIVER OF DISCHARGE

NOW COMES Avery Eliscu, debtor, and hereby submits this Waiver of his Discharge pursuant to 11 U.S.C. Section 727. In so filing, Eliscu represents that he is

---

1. The original motion was filed on December 17, 1992. However, the original motion was amended and then filed on January 28, 1993. A hearing on the motion was held on April 8, adjourned and continued to June 17, 1993. On June 17, the court entered an order that a supporting memorandum be filed as well as a deadline for the response. On July 28, the memorandum of law in support of the amended motion was filed.

2. Yorke objects as Trustee of Santa Fe Trail Transportation Company ("Santa Fe"), Case No. 85 B 8425; BN Transport, Inc. ("BN"), Case No. 85 B 10719; BNT Terminals, Inc. ("BNT"), Case

No. 85 B 13006; Rail Services, Inc. ("RSI"), Case No. 86 B 9226; SFTT, Inc. ("SFTT"), Case No. 86 B 9227; and Federal Transport, Inc. ("FTI"), Case No. 86 B 14931 (collectively known as the "Related Debtors").

3. All references to the "Bankruptcy Code" or "Code" are to Title 11 of the United States Code ("11 U.S.C.") and section references are also to 11 U.S.C., unless otherwise stated. Likewise, any reference to a "Rule" is to one of the rules of the Federal Rules of Bankruptcy Procedure, unless otherwise stated.

informed of the effect of waiving his discharge in bankruptcy, and that he so represented his full knowledge and understanding to this court on September 19, 1988. In filing this Waiver of Discharge, Avery Eliscu be and hereby does waive his discharge pursuant to 11 U.S.C. Section 727.

This court then signed a Notice of Waiver of Discharge, dated October 19, 1988, that was directed to the Debtor, creditors, and other parties in interest. The notice reiterated the language of the executed waiver. Notice of the waiver was then sent by the Clerk of the Bankruptcy Court to the Debtor, Creditor and all parties in interest.

Subsequent thereto, Banks, with court approval, made a partial assignment of estate causes of action to ATSF.[4] Thereafter, Banks, as the appointed trustee of the Debtor's estate, and ATSF, as a partial assignee, jointly filed preference and fraudulent transfer complaints and motions for turn-over of assets ("ATSF–Banks Adversary Actions"). Banks also filed several motions for turnover of assets and complaints to recover specific assets ("Banks Adversary Actions"). The two separate adversary proceedings based on the Yorke and ATSF Discharge Complaints, numbered 87 A 1242 and 88 A 348, were both closed by court orders on November 15, 1988. Obviously, these two adversary proceedings were rendered moot by the Debtor's voluntary waiver of discharge.

After this time, Eliscu entered into two settlement agreements. One of these agreements ("Yorke Settlement Agreement") was entered into during the month of July 1989 between Yorke, as trustee for some of the Related Debtors being Santa Fe, BN, RSI; SFTT; Eliscu; and Terminal Services, Inc. ("TSI"), a company of which Eliscu was an officer. The other relevant settlement agreement ("Banks Settlement Agreement") was entered into on January 23, 1990 between Banks, ATSF, Eliscu, and other individuals and entities. This settlement concerned the Banks and ATSF–Banks Adversary Actions.

4. The partial assignment of estate causes of action was approved by this court on September 30, 1988.

## DISCUSSION

Eliscu asks this court to exercise its discretionary power under section 105(a) to vacate Eliscu's waiver. Eliscu makes essentially two arguments as to why this court should so exercise its equitable powers. First, that the Record supports the vacating of the waiver because it is barren of competent facts justifying the denial of a discharge and second, that Eliscu's reliance on the settlement agreement makes it inequitable to deny the motion to vacate.

After thoroughly examining these arguments and the Record, this court determines that these arguments swing the other way. First, the Record supports the denial of the motion to vacate the discharge, because the facts demonstrate that Eliscu filed and the court approved a properly executed waiver. Second, reliance on the waiver by the interested parties and the inequitable consequences of vacating the waiver at this late date support the denial of the motion to vacate.

1. *No Facts Have Come to Light to Cause The Court to Question The Appropriateness of its Approval of the Executed Waiver.*

In his pleadings, Eliscu argues that only dishonest debtors should be denied a discharge and that the Record lacks sufficient evidence to support a determination that the debtor committed any of the wrongful acts alleged in these various complaints. Eliscu's argument maybe correct but it is irrelevant to the issue before the court.

To support his argument that the Record is barren of evidence supporting the withholding of discharge, Eliscu cites to denials set forth in his answers to the various filed complaints, assertions made in motions for approval of the two compromises, and the provisions contained in these two settlement agreements. However, Eliscu ignores the fact that he executed a *voluntary unconditional* waiver. It was not contingent on any

specific wrongdoing by Eliscu. The standards for deciding whether to involuntarily deny the debtor a discharge under section 727 do not apply to the voluntary waiver exception under section 727(a)(10). An inquiry into the sufficiency of allegations against Eliscu is totally irrelevant to a voluntary waiver.

The court cannot decide the propriety of the allegations against Eliscu in a vacuum— trials are needed. The trial of the objections to discharge became unnecessary, because of his executed voluntary waiver. For instance, Yorke argues that any lack of evidence supporting the Related Debtors' discharge complaint is due to the fact that no further investigation occurred when the waiver was executed and the case subsequently dismissed.

■ Examining the averments set forth in these various pleadings for evidence sufficiently substantiating the denial of discharge is an improper inquiry for determining whether the court should now vacate a voluntary unconditional waiver five years after the fact. The relevant inquiry for the court is to examine whether the court's original approval was erroneous in light of the Record and any new facts presented to this court. The Record clearly supports the court's original approval and no facts have come to light to cause this court to question its approval of Eliscu's voluntary waiver.

This court found no case law directly on point to aid it in the determination of the appropriate standard for vacating a waiver of discharge. Normally, a party seeking this type of relief would either file a motion to alter or amend a judgment pursuant to Rule 9023 or file a motion for relief from judgment or order pursuant to Rule 9024.[5] However, it is clear from the Record that the time limits for filing such motions have expired. *See* Rules 9023 and 9024. Eliscu has called upon this court to exercise its limited equitable power under section 105. If and to the extent this court can exercise such power, it refuses to so exercise it in this situation as to do so, in this court's considered judgment, would be an abuse of that power.

■ In deciding whether to exercise this power, this court uses the reasons set forth in Rule 9024 to warrant a relief from judgment to guide it. Thus, it has examined whether mistake, inadvertence, excusable neglect, newly discovered evidence, or fraud would warrant this court's vacating of its approval. *See* Rule 9024 and Fed.R.Civ.P. 60(b).

The *In re Leiter* court, 109 B.R. 922 (Bankr.N.D.Ind.1990), discussed the jurisdictional problem of applying Fed.R.Civ.P. 59(e) to a Chapter 7 discharge order that was not subject to a motion to alter or amend within 10 days of its entry. *Id.* at 923–24. That court also discussed the fact that the requirements of Fed.R.Civ.P. 60(b) must be met in order to use it to set aside a judgment. *Id.* at 924–25.

This court examined *In re Unroe,* 937 F.2d 346, 349–51 (7th Cir.1991) (deciding that a bankruptcy court did not abuse its discretion in considering certain factors that caused it to apply its equitable power to allow the I.R.S. to file a claim as an amendment to an earlier one); *Ross v. Mitchell (In re Dietz),* 914 F.2d 161, 164 (9th Cir.1990) (finding that a bankruptcy court "acted consistently with the spirit of the bankruptcy rules" when it considered a request for revocation of a discharge order even though the court never formally entered an order of discharge). However, this court specifically notes that *Gekas v. Pipin (In re Met–L–Wood Corp.),* 861 F.2d 1012, 1019 (7th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989), may be read to preclude this court from exercising an *inherent* power to reconsider its approval; even if the reconsideration was done within a reasonable time of the action.

Eliscu waived his right to a bankruptcy discharge from all debts pursuant to section 727(a)(10). This waiver means that Eliscu is denied a Chapter 7 discharge from all debts, not just certain debts arising from specific claims. (As is the case under a section 523 discharge exception or a reaffirmation of a

---

5. Generally, Rule 9023 applies Fed.R.Civ.P. 59 to cases under the Code. Likewise, Rule 9024 applies Fed.R.Civ.P. 60 to cases under the Code but subject to certain modifications.

specific debt under section 524.)[6] Section 727(a)(10) and Rule 4004(c) govern the procedure for the waiver of this so called "general" discharge. The pertinent part of Rule 4004(c) requires the court to grant a discharge unless the debtor *filed* a waiver under section 727(a)(10). Section 727(a)(10) provides, in pertinent part, that the court must grant the debtor a discharge unless the court *approves* a written waiver of discharge that was executed by the debtor after the Chapter 7 order for relief. These provisions have been interpreted to require that a waiver be valid and timely for it to be considered effective. *See Klingman v. Levinson (In re Levinson),* 58 B.R. 831, 836–37 (Bankr.N.D.Ill. 1986), *aff'd,* 66 B.R. 548 (N.D.Ill.), *aff'd,* 831 F.2d 1292 (7th Cir.1987). The *Levinson* court reasoned that three requirements must be met in order for a court to decide that the waiver of discharge is effective under the Code: It must be: (1) in writing, (2) signed by the debtor after the order for relief (post-petition), and (3) approved by the court. *Id.* at 837. *See also Cheripka v. Republic Ins. Co. (In re Cheripka),* 122 B.R. 33, 34 (Bankr. W.D.Penn.1990) (separating the post-petition timing element so as to create four requirements for an effective waiver of discharge requirements under section 727(a)(10)). In Eliscu's case, these requirements have been met.

◼ While section 727(a)(10) requires the court to approve the waiver, neither it nor any other section of the Code set forth any standards for approval. *Chilcoat v. Minor (In re Minor),* 115 B.R. 690, 693 (D.Colo. 1990); *In re Leiter,* 109 B.R. 922, 926 (Bankr. N.D.Ind.1990). Practice dictates that a court should determine that the debtor seeking approval of the waiver is aware of the consequences of the actions and that the Debtor's decision to waive the discharge is voluntary. *See Johnson v. Laing (In re Laing),* 146 B.R.

482, 483 (Bankr.N.D.Okla.1992) (upholding a waiver of discharge under § 727(a)(10) because of finding that the waiver was a conscious and informed judgment by the debtor); *In re Mapother,* 53 B.R. 433, 435 (Bankr.W.D.Ky.1985) (deciding that a "Stipulation of Nondischargeability" was a valid waiver under section 727(a)(10) because it presented a conscious and informed judgment by the debtor as to the consequences thereof, specifically denoted the creditors covered thereby, and set forth any terms or provisions qualifying such waiver); *Cf. Patterson v. Illinois,* 487 U.S. 285, 292, 108 S.Ct. 2389, 2394, 101 L.Ed.2d 261 (1988) (stating that a waiver of Fifth or Sixth Amendment rights must reflect an intentional relinquishment or abandonment of a known right or privilege—waving individuals must know what they are doing so that the choice is made "with eyes open."); *Colorado v. Spring,* 479 U.S. 564, 574, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987) (stating that one need not know every possible consequence of the waiver for a Fifth Amendment waiver to be knowing and intelligent); *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986) (stating that a valid Fifth Amendment waiver requires both uncoerced choice and a requisite level of comprehension; that is, it must be voluntary, knowing, and intelligent).[7]

This court conducted a hearing on Eliscu's waiver and there is nothing in the documents filed with this court that raise a question as to whether Eliscu understood the effect of his waiver or whether his waiver was voluntary. The language of the duly executed waiver is unequivocal, it does not assert a right to later vacate the waiver. Likewise, the notice of the waiver signed by this court is also unequivocal. Nowhere in the waiver does it state that Eliscu expected or understood that he could later vacate his waiver.

---

**6.** See *Chilcoat v. Minor (In re Minor),* 115 B.R. 690, 692–96 (D.Colo.1990) for a discussion of the differences between a waiver of discharge from all debts under section 727(a)(10) and a waiver of a particular debt under section 524(c).

**7.** In comparing a waiver of discharge to the waiver of a constitutional right, this court is *not* making the determination that waiving one's statutory right to a discharge is tantamount to

waiving a constitutional right. *See United States v. Kros,* 409 U.S. 434, 445–46, 93 S.Ct. 631, 638–39, 34 L.Ed.2d 626 (1973) (deciding that there is no constitutional right to a discharge). This court is only stating that a court should determine that an individual is aware of what he is voluntarily doing when he is relinquishing something that he may otherwise be entitled to.

Eliscu is a sophisticated businessman and was represented by competent counsel at the time of his waiver. *Cf. In re Pendelbury*, 94 B.R. 120, 124 (Bankr.E.D.Tenn.1988) (when the debtor is represented by counsel, the court should never have to utilize its equitable powers and interject itself into the reaffirmation process).

■ Believing the representations of Eliscu that he understood that he was unequivocally waiving his right to a discharge, this court approved the duly executed waiver and issued a notice to the Debtor, creditors and other parties in interest that the Eliscu waived his right to a discharge.[8]

No facts have come to light to cause this court to question the propriety of its original approval. There is no evidence in the Record that the waiver was mistakenly executed, that the waiver was not of Eliscu's free will, or that Eliscu did not understand the legal effect of his waiver. *But cf. In re Bestway Products*, 151 B.R. 530, 531 (Bankr.E.D.Cal. 1993) (a discharge may be vacated as a clerical error under Fed.R.Civ.P. 60(a) if its entry was a clerical mistake or an error arising from oversight or omission).

*If* Eliscu's filings make an implied assertion that he thought his waiver was conditional at the time he made it, then this assertion is not supported by the Record.[9] Whether Eliscu desired that his waiver be conditional when he entered into subsequent settlement agreements is irrelevant to the validity of his voluntary presettlement waiver. Eliscu's understanding as manifested by the waiver instrument and his representations in open court at the time of the approval process are the relevant focal points.

■ The waiver itself does not reference a later withdrawal of the waiver. If the debtor later has a change of heart, this change is immaterial to the propriety of this court's approval of the voluntary waiver. *Cf. Knopfler v. Schraiber (In re Schraiber)*, 117 B.R. 925, 932 (Bankr.N.D.Ill.1990) (Fed.R.Civ.P. 60(b) was not intended to relieve a party of a decision made when subsequent events reveal that the decision was unwise). Because this court determines that no new facts have been presented that would cause it not to approve the waiver, the motion to vacate can be denied on this basis alone. However, this court also examines Eliscu's second argument, that he should be granted the waiver because he complied with the various settlements he entered into.

2. *Reliance on the Various Settlement Agreements Supports the Denial of the Motion to Vacate the Waiver.*

■ Eliscu also argues that his alleged compliance with the terms of the settlement agreement and his cooperation with the objecting parties warrant the vacating of his waiver. He states that it would be unjust and inequitable to deny this Amended Motion, because he complied with the require-

---

8. The court's approval is documented by this Judge's signature on the Notice of Waiver directed to the Debtor, the Debtor's creditors, and other parties of interest. The docket for this case reflects the entry of the Notice of Waiver of Discharge and *Certificate of Mailing regarding 23 notices*, filed on 10/19/88 and entered on the docket on 10/27/88.

9. In reply to the responses filed by Banks and Yorke, Eliscu filed a "Reply Brief in Support of the Amended Motion to Withdraw Waiver of Discharge" ("Reply") on September 7, 1993. Attached to the Reply is an affidavit of Eliscu of the same date ("Affidavit").

On page five of his Reply, Eliscu cites paragraph six of the Affidavit as supporting the argument that "he waived his discharge with the expectation that he would be permitted to seek the withdrawal of that waiver provided he fully complies with all terms of the Settlement Agreements with both Yorke and Banks." Besides the timing problem between the waiver and the two settlement agreements, a review of the Affidavit does not support the assertion.

No where is the Affidavit does it state that Eliscu's actions were not voluntary or that he thought his waiver was revokable, or that he was mistaken about the effects of the waiver at the time of the court's hearing, his execution of such, or this court's approval. A review of the Affidavit does not cause this court to question its original determination.

Paragraph six of the Affidavit only states that "he successfully sought, in the Banks Settlement Agreement, to obtain assurance that ATSF would not object to a Motion to withdraw the waiver of his discharge, and that the Agreement was approved and executed by all parties, including Banks, with full knowledge of that provision. He relied on that provision as an inducement to accept the Settlement."

ments of the *two* settlement agreements in reliance upon a provision of the *Banks Settlement Agreement* that expressly contemplates his request for a waiver. This assertion is also rejected by this court. Even if Eliscu complied with the various settlement agreements, he is only entitled to the benefit of those agreements pursuant to contract law. However, in examining the reliance argument, this court still examined these agreements in order to determine whether Eliscu's reliance was reasonable and detrimental.

The Banks Settlement Agreement does not state that the waiver was conditional. The debated provision, appearing in paragraph 4.3 on page 12 of the Banks Settlement Agreement, only provides: "On the closing date and in order to fulfill the closing conditions, ATSF agrees not to object to any motion of the Debtor to obtain a discharge." The only legal effect of this provision is to estop ATSF from objecting to the Eliscu's motion to vacate the discharge order, if the debtor, in fact, met its obligations under the settlement order.[10] The Banks Settlement Agreement did not prevent Banks or Yorke from objecting to a discharge or this motion to vacate the waiver. Yorke was not a party to the Banks Settlement Agreement and although Banks was a party, the provision at issue only binds the named party, ATSF. Hence, reliance on the Banks Settlement Agreement in no way makes this court's refusal to vacate inequitable. A review of these various agreements demonstrates that Eliscu cannot reasonably interpret any one of them as giving him a right to vacate his voluntary unconditional waiver of discharge. Any reliance by Eliscu to the contrary is unreasonable.

The various settlement agreements were executed after the waiver, not before. Only the Banks Settlement Agreement makes references to a motion to vacate the waiver.

The Yorke Settlement Agreement makes no reference to a motion for waiver or right to withdraw a waiver. Any implied allegation by Eliscu that the withdrawal of his waiver after meeting the conditions of the two settlement agreements had been contemplated by the objecting parties has been specially challenged. In her pleadings, Banks asserts that Eliscu's fulfillment of the conditions of the Banks Settlement Agreement was not *quid pro quo* for a withdrawal of his waiver of discharge. She further asserts that the waiver and the Banks Settlement Agreement were motivated by separate and distinct adversary proceedings. In his pleadings, Yorke explicitly asserts that his settlement with Eliscu never contemplated Eliscu's vacating of the waiver.

A court review of the two settlement agreements and motions to compromise reveal that they make no reference to the Yorke Discharge Complaint, numbered 87 A 1242, or to the ATSF Discharge Complaint, numbered 88 A 348. In his Amended Motion, Eliscu asserts that at a February 22, 1990, hearing to approve the Banks Settlement Agreement, this court was made aware of the fact that Eliscu would seek the withdrawal of his waiver of discharge after he completed the payments under that agreement. Amended Motion ¶ 5. This court has reviewed the February 22, 1990, transcript as well as the January 4, 1990, and February 1, 1990, transcripts.[11] In so doing, this court found no statements referencing the Debtor's contemplated withdrawal of his waiver.

Eliscu could not have relied on the Banks Settlement Agreement in executing his waiver, as the agreement was not executed until after the waiver. However, the waiver certainly resulted in the dismissal of the Yorke and ATSF Discharge Complaints, as it was a little less than a month after the waiver that these complaints were dismissed.[12] The

---

**10.** To date, ATSF has not filed an objection. Therefore, Eliscu has received the benefit of his bargain.

**11.** All of these transcripts were supplied by the Debtor on April 9, 1993.

**12.** In November of 1988, Rule 7041 applied Fed. R.Civ.P. 41 to adversary proceedings: "except that a complaint objecting to the debtor's dis-

charge shall not be dismissed at the plaintiff's instance without notice to the trustee and only on order of the court containing terms and conditions which the court deems proper." Fed. R.Bankr.P. 7041 (1983) (subsequently amended in 1991 to expand notice requirements). The 1983 Advisory Committee Note for Rule 7041 stated: [D]ismissal of a complaint objecting to a discharge raises special concerns because the

waiver may also have been a factor in the willingness of the two trustees to enter into the subsequent settlement agreements. Additionally, creditors could have reasonably relied on Eliscu's unconditional waiver of discharge and public notice of that fact, by not offering any objections to the settlements. While the question of reliance does not control this court's decision, this court points out that whenever equity is called into play it must be balanced among all the parties.

Over four years after the waiver, Eliscu filed a motion which, if granted, would recant his waiver. Certainly, some interested parties would suffer if the rescission of the waiver was granted. For instance, Santa Fe, BN, RSI, and SFTT settled their four adversaries around July of 1989, which date is at least nine months after the waiver. Notice of the waiver was directed to all parties in interest, including the creditors.[13] The court is not required to speculate as to who did or did not rely on the notice. However, the court does know that Eliscu's waiver made it unnecessary for either Yorke or ATSF to pursue their Discharge Complaints. Further, the Related Debtors assert that they withdrew their proofs of claim against the estate of Eliscu, as part of a compromise with ATSF. The order allowing the withdrawal reserved the right of the Related Debtors to pursue Eliscu individually. However, in the Yorke Settlement Agreement, Santa Fe, BN, RSI, and SFTT agreed not to sue Eliscu in connection with any matters occurring before July of 1989. Thus, BNT and FTI still had the right to pursue Eliscu. This right would be adversely affected if Eliscu is allowed to recant his waiver. These two entities could be said to have detrimentally relied on Eliscu's waiver and Eliscu could be estopped from recanting his waiver. *See LaSalle Nat'l Bank v. General Mills*

*Restaurant Corp.*, 854 F.2d 1050 (7th Cir. 1988) (stating that use of estoppel is proper when one person's stance causes another to reasonably and detrimentally rely on that stance); *Cf. Levinson*, 58 B.R. at 837 (deciding that a debtor was collaterally estopped from relitigating whether a debt was nondischargeable).

In one of his pleadings, Eliscu admits another possible detrimental effect of his waiver by stating that "Yorke also filed an Adversary Complaint, 8[7] A 1242, objecting to Eliscu's discharge in this case, which became moot when Eliscu waived his discharge." [14] Supporting Memorandum at 1–2. In balancing the hardships of granting or not granting the motion to withdraw the waiver, this court determines that they greatly favor *not* granting the motion. *Cf. Wetherbee v. Willow Lane (In re Bestway Products)*, 151 B.R. 530, 537 (Bankr.E.D.Cal.1993) (reliance on a mistakenly entered discharge can lead to changes in position that are so substantial as to make it inequitable to correct the mistake).

The case law cited by Eliscu does not support the granting of the motion. In his pleadings, Eliscu asserts that *In re Burdick*, 62 F.Supp. 934 (W.D.N.Y.1945), is indistinguishable from this case as persuasive authority. However, this case has nothing to do with a waiver of discharge. In *Burdick*, a debtor did not appear at a hearing on his application for a discharge and the court denied the discharge. *Id.* Later, the court decided that this failure to appear should not be the sole reason for denying discharge and vacated its previous order. *Id.* However, in Eliscu's case, he was present at his waiver of discharge hearing and he represented to the court that he wished to voluntarily and unconditionally waive his Chapter 7 discharge.

plaintiff may have been induced to dismiss by an advantage given or promised by the debtor or someone acting in his interest.

**13.** As was done in this case, Rule 4004 requires the Clerk to give notice to all creditors of the waiver of discharge, *after it is filed.*

**14.** The court notes that if Eliscu were allowed to withdrawal his waiver, equity would demand the reinstatement of the Yorke and ATSF Discharge

Complaints; the mootness argument being no longer applicable. However, even with that reinstatement Yorke and ATSF would still be prejudiced. Since the objectors have the burden of proof (Rule 4005), the five year time delay would obviously place the plaintiffs at a significant disadvantage. Possible witnesses may now be unavailable, the memories of available witnesses may have faded, and documentary evidence may not have been preserved.

344

Likewise, another case persuasively relied upon by the debtor is distinguishable. In *In re Pilar Cordova Antuna*, 45 B.R. 271 (Bankr.W.D.Mo.1985), the court decided to exercise its equitable authority to *sua sponte* enter a *nunc pro tunc* order granting a discharge, when a mistake resulted in it not being originally entered. No mistake in was present here.

### CONCLUSION

After reviewing the Record, this court finds that there are no facts supporting Eliscu's Amended Motion, which seeks the withdrawal of his waiver of discharge, nor has his counsel presented any legal authority supporting his position. Eliscu's original assertions that he understood his right to a discharge, that he voluntarily wished to unequivocally waive that right, and that he actually waived his right when he executed the written waiver, remain. This court relied upon those assertions when it approved the waiver and when notice of the waiver was sent to all creditors. The creditors were also entitled to rely upon those assertions.

The waiver was properly executed and the court's approval was proper. Entering an order vacating the waiver would be the antitheses of issuing an order "that is necessary or appropriate to carry out the provisions" of the Code under section 105(a). Indeed, this court will refuse to enter the requested vacating order "to prevent an abuse of process."

THEREFORE IT IS ORDERED that the Debtor's Amended Motion to Vacate his Waiver of Discharge is denied.

### ORDER

For the reasons set forth in the Memorandum Opinion of even date, the Court hereby denies the Amended Motion of Debtor to Withdraw Waiver of Discharge, for Reinstatement of the Automatic Stay Pursuant to 11 U.S.C. [Section] 362(a), and for the Entry of an Order of Discharge.